**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BETTINA ROBINSON, *Individually and as Administratrix Ad Prosequendum to the Estate of HASSAN ROBINSON*,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN DAVID KELSEY, *et al.*,<br><br>Defendants. | Civil Action No. 24-9178 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** is before the Court on the Motion to Dismiss the First Amended Complaint (FAC), (ECF No. 21), for failure to state a claim pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) filed by Defendants County of Atlantic (Atlantic County), Warden Michael Kelly (Warden Kelly), and Neketa Layne (Officer Layne) (collectively Moving Defendants). (ECF No. 47.) The FAC was filed by Plaintiff Bettina Robinson, Individually and as Administratrix *Ad Prosequendum* of the Estate of Hassan Robinson (Hassan). (ECF No. 21 ¶ 5.) Plaintiff responded to the Moving Defendants' Motion to Dismiss, (ECF No. 48), and Moving Defendants filed a reply brief, (ECF No. 51). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Moving Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In the FAC, Plaintiff names as Defendants: Warden Kelly, the Warden of the Gerald L. Gormley Justice Facility ("Atlantic County Jail") at the time of the alleged incidents, and the person responsible for the operations, management, and oversight of the Atlantic County Jail, and for the care, safety, custody and control of inmates within Atlantic County; Officer Layne, a corrections officer at the Atlantic County Jail at the time of the incidents alleged in the FAC, and one of the persons responsible for the care, safety, custody, and control of inmates within the facility; Atlantic County, a governmental entity operating as the Atlantic County Jail; Sheriff Eric Scheffler (Sheriff Scheffler), the Sheriff of the Atlantic County Sheriff's Office at the time of the alleged incidents, who is responsible for the care, safety, custody, and control of persons arrested or taken into custody within the limits of Atlantic County, and for the safety of inmates incarcerated at or in transport to and from the Atlantic County Jail; Atlantic County Sheriff's Office, a governmental entity organized within and by the charter of Atlantic County responsible for the care, safety, custody, and control of persons arrested or taken into custody within the limits of Atlantic County, and for the safety of inmates incarcerated at or in transport to and from the Atlantic County Jail; and John Does 1-20 and ABC Entities 1-10. (ECF No. 21 ¶¶ 6-11.) Warden Kelly and Sheriff Scheffler are named in their individual capacities, and Officer Lane is sued in her official capacity. (*Id.* at 1.)

Plaintiff is the mother of Hassan, who, on August 11, 2024, succumbed to grievous bodily injuries he allegedly sustained as a result of the actions and/or omissions of Defendants. (*Id.* ¶ 12.) "Specifically, this matter arises as a result of an altercation between Plaintiff's decedent, and

---

[1] On a motion to dismiss, the Court accepts as true all well-pled facts in the Complaint. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

another individual, non-party, Shakur L. Aabid, which occurred on or about September 13, 2022," while Hasssan was in the care, custody, and control of Atlantic County, Atlantic County Sheriff's Office, Sheriff Scheffler, and incarcerated within the Atlantic County Jail under the supervision of Warden Kelly and Officer Layne.[2] (*Id.* ¶ 13.)

In the FAC, Plaintiff quotes from the Affidavit of Probable Cause executed by Detective Clemente Martinez on September 20, 2022, in support of a Complaint – Warrant charging Aabid with attempted murder in violation of N.J. Stat. Ann §§ 2C:5-1 and 2C:11-3(a)(1) and (2).[3] (ECF No. ¶¶ 14-15.) According to the Affidavit of Probable Cause:

> On September 13, 2022, detectives from the Atlantic County Prosecutor's Office Major Crimes Unit responded to the Atlantic County Justice Facility in reference to a serious assault in which Hassan Robinson was severely beaten by Shakur Aabid inside one of the cells.
>
> Video surveillance of the incident shows Robinson walking up to the cell door and getting in line with other inmates to get a meal. Aabid, who is sitting down, then stands to strike Robinson when he is not looking. He continuously punches Robinson in the face. Robinson immediately falls down on a bench as Aabid continues to punch and kick him. As Robinson falls to the floor, Aabid continues to stomp on his head and face repeatedly. During the attack, Aabid pulls Robinson out from underneath the bench, repositions him, and continues to stomp his head and face with his right foot as Robinson lays unconscious.
>
> After beating Robinson, Aabid walked up to the cell door, turned around and placed his hands behind his back for the responding officers. Robinson was transported to the hospital to be treated for severe head injuries.

(*Id.* ¶ 14.)

Hassan remained in a coma until he died on August 11, 2024. (*Id.* ¶ 16.) Furthermore,

---

[2] The FAC refers to Atlantic County, Atlantic County Sheriff's Office, and Sheriff Scheffler as "Atlantic County Defendants." (ECF No. 21 ¶ 13.)

[3] The Complaint – Warrant is attached to the FAC as Exhibit A. (ECF No. 21-1.)

Plaintiff alleges that "non-party inmate Chris Doe (last name unknown at present)" overheard Aabid tell an "as-yet unknown Corrections Officer" that he was going to attack Hassan; however, the officer appears to have taken no action to prevent the attack. (*Id.* ¶ 17.)

In addition, Atlantic County Defendants and Warden Kelly allegedly have direct supervisory and/or managerial oversight, care, custody, and control of the activities, movement of prisoners/inmates/arrestees, and all "goings-ons" at the Atlantic County Jail, as well as related secured areas inmates are taken to in preparation for court appearances, including with respect to both the physical environment and conduct of individual employees. (*Id.* ¶ 18.) "[I]t was through their knowing and deliberate indifference and/or their negligent failure to properly supervise and/or their negligent failure to timely intervene, that enabled another inmate to effectively beat Plaintiff's decedent into a coma which ultimately culminated in his death." (*Id.*) "Concerningly," Atlantic County Defendants (as well as Warden Kelly and Officer Layne) also allegedly had reason to know of Aabid's long and violent criminal history, but they took no actions to segregate him from the rest of the inmate population and Hassan. (*Id.* ¶ 20.)

On October 3, 2022, Judge Jeffrey R. Wilson, Superior Court of New Jersey, Law Division, Criminal Part, Atlantic County, entered an Order Granting Pretrial Detention against Aabid.[4] (*Id.* ¶¶ 20-21.) According to the FAC, this Order "sheds significant light on the threat" posed by Aabid:

> The defendant [Mr. Aabid] has sixteen pending charges from multiple dates, including carjacking, multiple robberies, aggravated assault, multiple offenses involving handguns. He has one prior indictable conviction, for second degree aggravated assault. On September 20, 2022, he was detained on his pending matters. It is clear he poses a danger to the community. In this case, he attacked another inmate in the county jail. The defendant stomped on the victim's head, then repositioned him to continue his assault. As a result, the victim suffered very serious head injuries. This occurred while the defendant was pending a detention hearing for carjacking and armed robbery. His criminal history reflects violent, dangerous

[4] The Order Granting Pretrial Detention is Exhibit B to the FAC. (ECF No. 21-2.)

> behavior. The defendant is facing exposure to life imprisonment on this pending matter, which provides an incentive not to appear for court. The risk of obstruction is high. It is reported the defendant's detention hearing on his pending matters was rescheduled multiple times due to his unruly behavior in the jail. It is further reported that during the detention hearing the defendant removed himself while the judge was talking. This behavior demonstrates a disregard for the criminal justice process, and therefore a likelihood of obstruction.

(*Id.* ¶ 20.) Given "the flagrantly violent and threatening nature of Shakur Aabid," Judge Wilson concluded that "[i]t is clear he poses a danger to the community." (*Id.* ¶ 22.)

According to Plaintiff, it was clear to Defendants that Aabid posed such a danger to the inmate community within the facility, especially given Judger Wilson's reference to the fact that Aabid's detention hearing had to be rescheduled multiple times because of his unruly behavior in jail. (*Id.* ¶ 23.) Given his criminal history and pattern of behavior, Defendants knew that Aabid was, "in essence, a ticking time bomb – a violent and dangerous criminal," who clearly posed a risk of harm to those around him, and Hassan become the unwitting victim of Aabid's violent nature because those entrusted with his care took no reasonable efforts to protect him. (*Id.* ¶¶ 24-25.)

Plaintiff alleges five counts. In Count I, Plaintiff asserts a claim under 42 U.S.C. § 1983 for failure to protect from attack in violation of the Eighth Amendment (as incorporated against the states through the Fourteenth Amendment) against all Defendants. (*Id.* ¶¶ 26-30.) According to Plaintiff, criminal justice facility officials have an affirmative duty to protect inmates from violence at the hands of other inmates; while incarcerated at the Atlantic County Jail, Hassan faced an appreciable and substantial risk of serious bodily harm (*i.e.*, a risk he would be attacked by another inmate), and despite having actual knowledge of this risk, Defendants were deliberately indifferent to that risk. (*Id.* ¶¶ 31-32.) "The Defendants' knowledge is not merely constructive"

and Defendants had cause to know that Aabid posed a substantial risk of bodily harm to Hassan whether: because of Aabid's long and varied criminal history rife with violence, actual and threatened; or because of instances of prior unruly and/or violent conduct within the Atlantic County Jail; or because of a "No Contact Order," which Plaintiff has reason to believe existed as between her son and Aabid; or for reasons not yet discovered, but which Plaintiff anticipates will come to light through discovery. (*Id.* ¶ 33.) Defendants' deliberate indifference is also "made manifest" by their failure to take reasonable efforts to segregate Aabid from the general inmate population, "thus exposing all inmates to an equal risk of harm at Aabid's hands (assuming the attack upon Plaintiff's decedent was indiscriminate), or, at the very least specifically exposing Plaintiff's decedent to the substantial risk of harm (in the event the attack was, in fact, targeted)." (*Id.* ¶ 34.) Despite Aabid's history and personal observations of his conduct ("warning signs" that Defendants either failed to recognize or consciously disregarded), Defendants took no affirmative steps to mitigate or safeguard against the substantial risk of harm posed by Aabid. (*Id.* ¶ 35.) According to Plaintiff, had Defendants not been deliberately indifferent to the appreciable and substantial risk of serious bodily harm Hassan faced, Hassan would not have suffered grievous bodily injury, resulting in him falling into a coma and his death. (*Id.* ¶ 36; *see also* ¶ 37 (alleging that Defendants' deliberate indifference was the actual and proximate cause of the harm suffered by Hassan.)

In Count Two, Plaintiff alleges a § 1983 claim for failure to intervene in violation of the Fourth Amendment (incorporated through the Fourteenth Amendment) against Officer Layne and John Does 1-20. (*Id.* ¶ 38.)

According to Plaintiff, under the Fourth Amendment, criminal justice facility officials have a duty to intervene to timely stop attacks upon inmates in their care, custody, and control, without

regard to whether such assaults are at the hands of another corrections officer or an inmate. (*Id.* ¶ 42.) Relying on the description of the Aabid assault in the Affidavit of Probable Cause, Plaintiff asserts that this recounting "suggests that this was not a simple 'one-and-done' style assault – in other words, this is not an instance where the aggressor simply walked up to the victim, struck them a single time, and that was the extent of the assault." (*Id.* ¶¶ 44-45 (stating that Plaintiff is not yet in possession of the surveillance camera footage of the attack).) Instead, the Affidavit of Probable Cause described: a protracted physical assault or savage beating in which Aabid struck Hassan, catching him off guard and causing him to fall to the ground, and proceeded to batter the victim, punching him and stomping on him repeatedly; at some point, Hassan found himself under the bench ("perhaps trying to put a barrier between himself and his attacker"), and Aabid pulled Hassan out from underneath the bench, repositioned him, and continued to stomp on Hassan's head and face; the words "continues" or "continuously" are used four times in the description of the assault; it is clear that the attack, in which the attacker had the opportunity to reposition the victim to continue the attack, was not "a short-one-punch-thrown tiff" but "a protracted assault, a barrage of punches and stomps, as Plaintiff's decedent desperately tried to crawl away under a bench, only to be pulled out again so that the violent onslaught could continue;" and the attack was not ended through any action on the part of Defendants (such as the intervention of a corrections officer) but rather by Aabid, who chose to end the assault (and thereby had sufficient time to get up, walk to the cell door, turn around, place his hands behind his back, and wait to be restrained by responding officers). (*Id.* ¶¶ 43, 50-52.)

Plaintiff alleges that "there was a Corrections Officer who, according to the *Preliminary Law Enforcement Incident Report* attached to Aabid's criminal complaint (Ex. 'A', p.7) 'personally observed the offense' – Defendant C.O. Layne." (*Id.* ¶ 53 (emphasis omitted); *see also*

ECF No. 21-1 at 7.) "Despite having 'personally observed' the assault upon Plaintiff's decedent, the prolonged nature of the attack and Aabid's continued conduct thereafter indicates that Officer Layne failed to timely intervene." (*Id.* ¶ 54.) "Having the ability to 'personally observe[]' means that Defendant C.O. Layne was necessarily close enough to the action to have Aabid and Plaintiff's decedent in her field of view." (*Id.* ¶ 55.) In fact, Officer Layne took no action to attempt to stop the attack. (*Id.* ¶ 56.) According to Plaintiff, given the circumstances (the protracted nature of the assault which only came to an end when the assailant decided "he had had enough" and Officer Layne's physical proximity to the attack), it is clear that Officer Layne had a realistic and reasonable opportunity to timely intervene; however, she failed to intervene before Aabid could inflict even more grievous injury upon Hassan and proximately causing Hassan harm. (*Id.* ¶¶ 58-59.)

"According to another inmate Chris Doe (last name unknown at present), Mr. Aabid informed a corrections officer (either C.O. Layne or one of the John Doe defendants) that he was going to attack Plaintiff's decedent before the attack began, making Defendants' conduct all the more unjustifiable." (*Id.* ¶ 60.) "Plaintiff acknowledges that there may also have been other Corrections Officers present within the vicinity of the subject attack who, along with Defendant C.O. Layne, failed to timely intervene to stop Aabid's assault upon Plaintiff's decedent, and thus, those unknown individuals are named herein this Court as Defendant John Does 1-20." (*Id.* ¶ 61 (further stating that Plaintiff shall seek leave to amend should discovery identify such individuals).)

In Count III, Plaintiff asserts a "LIABILITY OF SUPERVISOR FOR CONDUCT OF SUBORDINATE" claim under § 1983 and the Fourteenth Amendment against Warden Kelly. (*Id.* at 15 (emphasis omitted).) Plaintiff notes that a supervisory defendant may be found liable, if, "as

a person in charge," they had knowledge of and acquiesced in their subordinates' violations of an individual's constitutional rights. (*Id.* ¶ 66.) Allegedly, Warden Kelly, as Warden of the Atlantic County Jail, was the person responsible for its operations, management, and oversight, the care, safety, custody, and control of inmates, and the supervision and direction of facility staff, including Officer Layne (and John Does 1-20 if they were also corrections officers). (*Id.* ¶¶ 67-69.) The failure to act by Warden Kelly's subordinates (Officer Layne and John Does 1-20) deprived Hassan of his rights as alleged in Count II. (*Id.* ¶ 70.)

Plaintiff further alleges that Warden Kelly knew or had reason to know of a training deficiency "present in C.O. Layne and John Does 1-20" regarding their responsiveness in intervening in ongoing inmate-on-inmate attacks, but Warden Kelly disregarded the obvious consequence that this deficiency would result in constitutional violations through subordinates' inaction and/or untimely action. (*Id.* ¶¶ 71-72.) According to Plaintiff, Warden Kelly's failure to correct his subordinates' non-responsiveness is tantamount to acquiescence in the constitutional violation and was a moving force in Hassan's injury, or a custom, policy or practice, "with which Warden Kelly had become complacent," and "which amounts to his deliberate indifference towards the constitutional rights of Plaintiff's decedent." (*Id.* ¶¶ 73-74.)

In Counts IV and V of the FAC, Petitioner alleges a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, against all Defendants, and a claim for tortious conduct of fictitious individuals and entities as to John Does 1-20 and ABC Entities 1-10, respectively. (*Id.* ¶¶ 76-85.)

Plaintiff requests judgment against Defendants jointly, severally, and alternatively, for general, compensatory, punitive, and exemplary damages, and attorney's fees and costs pursuant to 42 U.S.C. § 1988 and N.J. Stat. Ann. § 10:6-2(f). (*Id.* at 19.)

Through counsel, Plaintiff filed her initial Complaint on September 13, 2024. (ECF No. 1.) On April 2, 2025, the Court entered a Letter Order granting Plaintiff leave to file an amended complaint, (ECF No. 18), and the FAC was filed on May 2, 2025, (ECF No. 21). On March 23, 2026, the Court entered a Consent Order in which the parties consented to the dismissal without prejudice of Atlantic County Sheriff's Office and Sheriff Scheffler (converting to dismissal with prejudice following the conclusion of discovery). (ECF No. 45.)

On March 13, 2026, Moving Defendants filed their Motion to Dismiss. (ECF No. 47.) Plaintiff filed her opposition brief on March 27, 2026, (ECF No. 48), and Moving Defendants replied on April 7, 2026, (ECF No. 51).

## II. <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of "showing that a

complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231-32 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. DISCUSSION

### A. Count I: Failure to Protect

In Count I of the FAC, Plaintiff alleges a "failure to protect from attack" claim under § 1983 against all Defendants, including Atlantic County.[5] (*See* ECF No. 21 ¶¶ 26-37.)

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court recognized that, while local government units can be liable under § 1983, "a municipality cannot be held liable under [the federal civil rights statute] on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, a local government cannot be held liable for "an injury inflicted solely by its employees or agents." *Id.* at 694. However, a plaintiff may hold a municipality liable if he or she shows that the municipality's "choices were the 'moving force'

---

[5] Section 1983 "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).

Moving Defendants argue that they are immune from suit pursuant to the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. 59:5-2(b)(4) (stating that neither a public entity nor a public employee is liable for any injury caused by a prisoner to any other prisoner). (*See* ECF No. 47-1 at 4-6.) However, the provisions of the NJTCA do not apply to civil rights claims under either federal law (§ 1983) or § 1983's New Jersey counterpart, the NJCRA. *See Est. of Vargas v. Cnty. of Hudson*, No. 14-1048, 2020 WL 3481774, at *10 n.13 (D.N.J. June 26, 2020) ("The NJTCA immunities, however, do not apply to Section 1983 claims. *See Bostrom v. N.J. Div. of Youth & Family Servs.*, 969 F. Supp. 2d 393, 418 (D.N.J. 2013) ('[I]t is well established that the New Jersey Tort Claims Act provides no immunity to public officers sued under federal law.' (citing *Tice v. Cramer*, 133 N.J. 347, 375 (1993)))."); *Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 611 (D.N.J. 2010) ("The [NJTCA] does not grant public employees immunity from suits under rights of action provided by the New Jersey Constitution, nor from suits under the NJCRA. *Owens v. Feigin,* 194 N.J. 607, 947 A.2d 653 (2008) (holding that the NJTCA does not apply to the NJCRA); *Garlanger v. Verbeke,* 223 F.Supp.2d 596, 604 (D.N.J.2002).").

behind the constitutional violation." *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025) (quoting *Monell*, 436 U.S. at 694).

There are two "avenues" for establishing municipal liability:

> A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, [*Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)] (citing [*Monell* 436 U.S. at 694]), or that they were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id.* (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers. *Id.* at 798-99.

*Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). While establishing an unconstitutional policy or custom is required under the first theory (and not required under the second theory), a failure/inadequacy theory of liability requires demonstrating that the failure/inadequacy amounts to deliberate indifference. *See Id.* at 106.

In *Monell*, the Supreme Court held that a municipality may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible." 436 U.S. at 694. "A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983." *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020). A "pertinent decision by an official with final decision-making authority on the subject constitutes an official policy." *Id.* at 383 (footnote and citation omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). In any event, "if the conduct was simply that of an individual employee who

was not acting pursuant to a policy or custom, that conduct cannot give rise to" a cognizable *Monell* claim. *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020).

A plaintiff may bring a claim for the municipality's failure to train, supervise, or discipline subordinates. *See Young v. Monmouth Cnty.*, No. 24-4975, 2025 WL 354447, at *3 (D.N.J. Jan. 31, 2025). To plead a "failure to act affirmatively" claim, the plaintiff must allege facts showing "there was an obvious and clear need for the affirmative promulgation of a new policy to address deficiencies which, if left uncorrected, were so likely to cause a violation such as the one the plaintiff suffered that the defendant in question can be said to have been deliberately indifferent to the deficiency." *Id.* (first citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222-23 (3d Cir. 2015); and then citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

Accordingly, claims for failures in training, supervision, and discipline require a plaintiff to establish that a municipality's failure to train, supervise, or discipline "amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact." *Kelley v. Reyes*, No. 19-17911, 2025 WL 618207, at *21 (D.N.J. Feb. 26, 2025) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Young*, 2024 WL 354447, at *3. "This consists of establishing whether '[1] municipal policymakers know that employees will confront a particular situation, [2] the situation involves a difficult choice or a history of employees mishandling, and [3] the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Kelley*, 2025 WL 618207, at *21 (quoting *Forrest*, 930 F.3d at 105).

The plaintiff must allege facts showing that the failure to act reflects a deliberate or conscious choice. *See Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *3 (3d Cir. June 7, 2024) (per curiam); *Est. of Roman*, 914 F.3d at 798. "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other

words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (alteration in original) (quoting *City of Canton*, 489 U.S. at 391); *see also Beers*, 2024 WL 2874283, at *3 (same). "Establishing a failure to train claim under Section 1983 is difficult and applies in narrow situations." *Cooper v. City of Paterson*, No. 23-3566, 2024 WL 1298917, at *5 (D.N.J. Mar. 27, 2024) (first citing *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997); and then citing *City of Canton*, 489 U.S. at 387)); *see also Young*, 2025 WL 354447, at *3 (stating that a municipality's culpability is at its most tenuous where a claim rests on a failure to train and will only be tenable where the failure to train amounts to deliberate indifference to the rights of persons in contact with untrained personnel).

In any event, a pattern of similar constitutional violations is ordinarily required to demonstrate deliberate indifference for purposes of failure/inadequacy claims. *See Hightower*, 130 F.4th at 357; *Thomas*, 749 F.3d at 223; *Young*, 2025 WL 354447, at *3. However, "[a] mere pattern of a handful of vaguely similar constitutional violations is generally insufficient to meet this requirement." *Young*, 2025 WL 354447, at *3 (quoting *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011)) (noting that, in *Connick*, the Supreme Court held that "having four convictions overturned for *Brady* violations over ten years was insufficient to support a failure to train claim where those violations were dissimilar to the specific *Brady* violation").

"Nevertheless, the Supreme Court posited in *Canton* that in certain situations, the need for training 'can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights' even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (quoting *City of Canton*, 489 U.S. at 390 n.10); *see also Hightower*, 130 F.4th at 357 ("[T]he Supreme Court has 'hypothesized' that 'in a narrow range of

circumstances, a pattern of similar violations might not be necessary to show deliberate indifference.'" (quoting *Connick*, 563 U.S. at 63)). Single-incident claims depend on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Thomas*, 749 F.3d at 223-24 (alteration in original) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty, Okla v. Brown.* 520 U.S. 397, 409 (1997)). "[S]uch a claim is not viable in the absence of an extremely obvious deficiency." *Young*, 2025 WL 354447, at *3 (citing *Connick*, 563 U.S. at 63-64).

There are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, officials may be sued "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of supervisory liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his or her subordinates' violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). "Failure to" claims constitute a subcategory of supervisory policy or practice liability. *See Harris v. Smith*, No. 25-3372, 2025 WL 2237554, at *2 (D.N.J. Aug. 6, 2025).

Count I alleges a claim for failure to protect under the Eighth Amendment. (ECF No. 21 at 8.) The Eighth Amendment imposes a general duty on prison officials to protect convicted inmates from violence by other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Similarly, pretrial inmates[6] have a right under the Fourteenth Amendment to "security from

---

[6] Plaintiff does not state whether Hassan was a pretrial detainee or a convicted and sentenced prisoner.

physical assault by fellow prisoners." *Hightower*, 130 F.4th at 356 (citing *Davidson v. O'Lone*, 752 F.2d 817, 821 (3d Cir. 1984)). "A prison violates that duty [to protect pretrial detainees and convicted prisoners] if it (1) creates conditions that 'pose[ ] a substantial risk of harm' and (2) is deliberately indifferent 'to inmate health or safety.'" *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 834).

It is undisputed that, under either the Eighth or the Fourteenth Amendment, "[d]eliberate indifference" is a subjective standard whereby "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)), *abrogated on other grounds as recognized by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). As noted by the Third Circuit:

> [i]t is not sufficient that the official should have known of the risk. [*Beers-Capitol*, 256 F.3d at 133]. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence."
>
> *Farmer*, [511 U.S. at 842]. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Id.* at 367. To satisfy the deliberate indifference requirement, a plaintiff may allege facts plausibly indicating either that the official had notice of a particularized risk of a specific inmate being attacked by others or the existence of a longstanding and pervasive problem known to the official:

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Farmer*, 511 U.S. at 842-43 (citation and footnote omitted); *see also Keeling v. Wetzel*, No. 23-2045, 2024 WL 3770307, at *3 (3d Cir. Aug. 13, 2024) (per curiam) (considering whether allegations indicate that the inmate's cellmate "made specific threats of serious harm, describe a history of physical conflict with that cellmate, or otherwise suggest that a substantial risk of being attacked by his cellmate was 'longstanding, pervasive, well-documented or expressly noted by prison officials in the past.'" (quoting *Farmer*, 511 U.S. at 842)); *Jeremiah v. Kovach*, No. 20-1915, 2022 WL 21778340, at *7 (M.D. Pa. Feb. 28, 2022) (stating that, under *Farmer*, an inmate could demonstrate deliberate indifference by showing either a failure to respond to a particularized threat to the victim or a substantial, long-standing, pervasive, or expressly noted risk of inmate attacks in circumstances suggesting that the official had been exposed to such information (quoting *McGlinchey v. Lane*, No. 18-0014, 2020 WL 2513536, at *6 (W.D. Pa. May 15, 2020))).

Moving Defendants argue that Plaintiff's *Monell* claim fails because she pleads no facts regarding a municipal policy or custom and does not allege conduct by a municipal policymaker. (ECF No. 47-1 at 3-10.) Plaintiff does not respond to, or acknowledge, Moving Defendants' *Monell* arguments.[7] In fact, Plaintiff does not mention Count I in his opposition brief. (*See generally* ECF No. 48.) Accordingly, the Court concludes that Plaintiff has forfeited his *Monell* claim against Atlantic County in Count I. *See Thomson v. Volvo Car N. Am., LLC*, No. 25-17193, 2026 WL 2664385, at *5 n.4 (D.N.J. Sept. 10, 2026) (concluding that the plaintiffs waived their claim with respect a count due to their failure to respond to the defendants' argument that they lacked standing to bring that claim); *Falcone v. Dickstein*, No. 22-0921, 2024 WL 4839779, at *4-5 (D.N.J. Nov. 20, 2024) (concluding that the plaintiff forfeited any argument that his allegedly protected speech was something other than his refusal to wear a mask by failing to raise such

---

[7] Plaintiff is represented by counsel in this matter.

arguments in his briefing in opposition to the defendants' motion to dismiss).

In any event, the Court concludes that Plaintiff fails to state a plausible *Monell* claim.

Plaintiff does not identify an affirmative unconstitutional policy or custom in her FAC; instead, she alleges that Defendants failed to take reasonable efforts to segregate Aabid and took no affirmative steps to mitigate or safeguard against the substantial risk of harm posed by Aabid. (*See* ECF No. 21 ¶¶ 34-35.) The Court accordingly construes Count I as invoking the "failure/inadequacy" theory or "avenue" of municipal liability, which requires showing that the failure/inadequacy amounts to deliberate indifference. *Forrest*, 930 F.3d at 105-06. An alleged pattern of similar constitutional violations is ordinarily required to demonstrate deliberate indifference for purposes of failure/inadequacy claims. *See Hightower*, 130 F.4th at 357; *Thomas*, 749 F.3d at 223; *Young*, 2025 WL 354447, at *3. Plaintiff fails to allege facts plausibly indicating the existence of such a pattern of similar violations.

Plaintiff alleges that Defendants had cause to know that Aabid posed a substantial risk of serious bodily harm to Hassan:

> whether because Defendants knew of Aabid's long and varied criminal history rife with violence, actual and threatened; or because of instances of prior unruly and/or violent conduct within the Atlantic County Jail; or because of a "No Contact Order" which Plaintiff has reason to believe existed as between her son and Shakur Aabid; or for reasons not yet discovered, but which Plaintiff anticipates will come to light through discovery.

(ECF No. 21 ¶ 33.) According to Plaintiff, "[i]t appears clear, given both Aabid's criminal history and his pattern of behavior, that the Defendants named in this action knew that Aabid was, in essence, a ticking time bomb – a violent and dangerous criminal, who clearly posed a risk of harm to those around him." (*Id.* ¶ 24.) Plaintiff also refers to "personal observations of [Aabid's] conduct – warning signs which the Defendants either failed to recognize, or recognized, but

consciously disregarded." (*Id.* ¶ 35.)

However, it is well established that a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Here, Plaintiff does not provide any "factual enhancement" in support of her speculation regarding the existence of a "No Contact Order," unspecified "warning signs,"[8] or other "reasons not yet discovered" for why Defendants allegedly knew that Aabid posed a substantial risk of serious bodily harm to Hassan. Plaintiff also does not identify any specific prior "instance of prior unruly and/or violent conduct within the Atlantic County Jail," involving either Hassan, another inmate, or any other individual (such as a corrections officer). Plaintiff relies on Judge Wilson's Order Granting Pretrial Detention, summarizing the pending charges that evidently led to Aabid's incarceration at the Atlantic County Jail (including carjacking, multiple robberies, and aggravated assault), indicated that Aabid had one prior conviction (for aggravated assault), and noted that "[i]t is reported that during the detention hearing [it] was rescheduled multiple times due to his unruly behavior in the jail." (ECF No. 21 ¶¶ 20-21; ECF No. 21-2 at 5.) But there is no indication that Aabid was previously charged with, or convicted of, committing any crime in a correctional facility. In addition, the "unruly behavior in jail" is not described. Under the circumstances, Plaintiff does not plausibly allege the

---

[8] In the FAC, Plaintiff alleges that another inmate named Chris overheard Aabid tell an as-yet unknown corrections officer that he was going to attack Hassan. (ECF No. 21 ¶ 17; *see also id.* ¶ 60 (alleging that inmate informed "a corrections officer (either C.O. Layne or one of the John Doe defendants) that he was going to attack Plaintiff's decedent before the attack began").) However, it appears that this officer did not notify his superior or superiors of the threat. (*Id.* ¶ 17 ("[Y]et despite this prior warning, the Corrections Officer appears to have taken no action to prevent the brutal attack.").)

prior pattern of similar constitutional violations required to sustain his *Monell* claim against Atlantic County.[9]

For the foregoing reasons, the *Monell* claim must be dismissed without prejudice. Furthermore, Plaintiff names two other Moving Defendants in Count I: Warden Kelly and Officer Layne. For substantially the same reasons that the Court dismisses the *Monell* claim, it dismisses the equivalent supervisory liability claim against Warden Kelly. As to Officer Layne, Plaintiff alleges that Officer Layne is a rank-and-file corrections officer who observed Aabid's attack on Hassan. (*See* ECF No. 21 ¶¶ 7, 53.) Plaintiff fails to allege facts indicating that Officer Layne had any role in determinations regarding where to house or assign inmates such as Aabid or had notice of either a pattern of prior violent incidents in the facility or Aabid's criminal history or unruly behavior in the Atlantic County Jail. (*See id.* ¶ 18 (omitting Officer Layne from allegation that "[t]he Atlantic County Defendants [Atlantic County Sheriff's Office, and Sheriff Scheffler], as well as Warden Kelly all have direct supervisory and/or managerial oversight, care, custody and control of the activities, movement of prisoners/inmates/arrestees, and of all goings-on at the Atlantic County Jail, as well as related secured areas prisoners are taken to in preparation for court appearances, including with respect to [ ] the physical environment of the jail facility")); *Trussell*, 2025 WL 914923, at *21-22 (dismissing "failure to protect" claim against corrections officers because, *inter alia*, "there are no alleged facts indicating how, when, and why rank-and-file corrections officers would know the numbers of overdoses and overdose deaths in the facility over

---

[9] "The Supreme Court has 'hypothesized' that 'in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference.'" *Hightower*, 130 F.4th at 357 (quoting *Connick*, 563 U.S. at 63). The present matter does not satisfy the requirements for a single-incident claim (*e.g.*, Plaintiff fails to allege prior incidents that, even if insufficient to constitute a pattern of constitutional violations, raise a reasonable inference that the attack was a highly predictable consequence of the municipality's failures for purposes of single-incident liability, *see Trussell v. Monmouth Cnty.*, No. 24-0151, 2025 WL 914923, at *24 (D.N.J. Mar. 26, 2025)).

a two-year period.”).

**B. Count II: Failure to Intervene**

In Count II, Plaintiff asserts a “failure to intervene” claim against Officer Layne. (ECF No. 21 ¶¶ 38-61.) It is undisputed that, to plead a failure-to-intervene claim, the plaintiff must allege facts showing that the officer had a realistic and reasonable opportunity and simply refused to do so. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

Moving Defendants argue that Count II should be dismissed with prejudice because the alleged facts are insufficient to suggest that Officer Layne “was in position to intervene when she unexpectedly came upon the assault between two male inmates, along with ten (10) other inmates in the cell.” (ECF No. 47-1 at 10.) According to Moving Defendants, “[t]he entire assault occurred in 23 seconds,” once Officer Layne discovered the assault, she called a Code 2 for an inmate fight as well as a code for medical assistance, back up officers arrived within nine seconds, all jail procedures were followed, and no criminal charges were filed against Officer Layne. (*Id.* (further asserting that, among other things, Plaintiff does not allege any specific prior incidents of an officer’s failure to intervene in an assault by another inmate).) In their reply, Moving Defendants contend that Officer Layne followed Atlantic County Jail procedures, and, “[p]er policy 1202.6 a correctional officer is to call for back up which is what Officer Layne did [by] issu[ing] a code 3.” (ECF No. 51 at 3 (citing ECF No. 51 at 6 (Ex. A)); *see also id.* at 3 (arguing that “[t]he timeline provided by these Defendants was to demonstrate that Officer Layne made the call within seconds [and] there was no hesitation,” she followed the applicable policy as she was trained to do, no reasonable jury would think that one correctional officer “should take on a dozen inmates,” and “[t]here no tacit admission but strong indignation [sic] that policy and procedure was followed.”)

Accepting all well-pled facts in the FAC as true, and drawing all reasonable inferences

from such facts in Plaintiff's favor, the Court concludes that Plaintiff alleges a facially plausible claim against Officer Layne for failing to protect Hassan from Aabid. As Plaintiff notes in the FAC, the description of the assault provided by the Affidavit of Probable Cause indicates that the attack lasted for sufficient time to permit Officer Layne a realistic opportunity to intervene. (*See* ECF No. 21 ¶¶ 44-52.) For instance, enough time passed for Hassan to "[find] himself underneath the bench on which he had been sitting – perhaps trying to put a barrier between himself and his attacker – and yet Aabid 'pull[ed] [Hassan] out from underneath the bench, reposition[ed] him, and continu[ed] to stomp his head and face.'" (*Id.* ¶ 47 (alterations in original).) The FAC and the attached Probable Affidavit of Probable Cause are silent as to the number of inmates that were in the cell and how many seconds it took Aabid to attack Hassan and then give himself up to responding officers (and for the responding officers to arrive). As to whether Officer Layne called a Code 2, the FAC alleges that she "took no actions to attempt to stop the attack," implying that she did not report an inmate fight. (*Id.* ¶ 56.) Moving Defendants do not provide any citation to support their factual assertions, and the Court accordingly is unable to decide whether they can be considered on a Motion to Dismiss under Rule 12(b)(6). *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Plavix Mktg., Sales Pracs. & Prod. Liab. Litig.*, 974 F.3d at 231-32 (stating that defendant moving to dismiss under Rule 12(b)(6) bears the burden of showing that a complaint fails to state a claim"). In any event, Defendants' arguments regarding Officer Layne's conduct "appear better suited to a motion for summary judgment after the parties have an opportunity to conduct discovery,"

*Trussell*, 2025 WL 914923, at *19 (citations omitted).

Accordingly, the Court denies Moving Defendants' Motion to Dismiss as to Count II.[10]

**C. Count III: Supervisory Liability**

According to Plaintiff, the supervisory liability claim against Warden Kelly is legally supported. (ECF No. 48 at 7.) Purportedly, Plaintiff alleges that "it was Warden Kelly's own deliberate indifference towards the constitutional rights of the inmates under his supervision, as exemplified by his inadequate training of his subordinates, like Defendant Layne, that was a moving force which caused Plaintiff's decedent's ultimate injury." (*Id.* at 8; *see also id.* at 8 (asserting that Warden Kelly was the supervisor in the position to train and supervise corrections officers involved in the attack, and but for his failures to train or supervise subordinates, it is possible that Hassan would not have been harmed).)

However, the Court has already concluded that Plaintiff's "failure/inadequacy" supervisory liability claim against Warden Kelly must be dismissed because Plaintiff fails to allege a prior pattern of similar unconstitutional violations (and does not satisfy the requirements for "single-incident liability"). *See supra* Section III.A. The Court reaches the same conclusion with respect to Count III, and it accordingly dismisses the claim against Warden Kelly without prejudice.

**D. Count IV: NJCRA**

Plaintiff asserts in Count IV of the Complaint that all Defendants violated the NJCRA. (ECF No. 21 ¶¶ 76-80.) It is undisputed that NJCRA is analogous to § 1983 and that the analysis

---

[10] Moving Defendants assert that they are entitled to qualified immunity. (*See* ECF No. 47-1 at 12-13.) At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining: (1) whether the complaint contains plausible allegations of a constitutional violation; and (2) whether the asserted constitutional right is clearly established. *See Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021) (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)). Moving Defendants evidently seek qualified immunity under the first prong (ECF No. 47-1 at 12-13); however, for the reasons stated above, the FAC contains facially plausible allegations of a "failure to intervene" constitutional violation by Officer Layne.

of Plaintiff's claims against Moving Defendants is the same under both statutes. (ECF No. 47-1 at 12; ECF No. 48 at 9.) Accordingly, because the Court dismisses Count I against Moving Defendants and Count III against Warden Kelly, it must also dismiss without prejudice Plaintiff's parallel NJCRA claims against these Defendants. Likewise, to the extent that the Court denies the Motion to Dismiss as to Count II, the Court denies the Motion to Dismiss as to the equivalent civil rights claim under state law in Count IV.[11]

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**. The Court dismisses without prejudice Count I against Moving Defendants, Count III against Warden Kelly, and, to the extent that it alleges claims equivalent to the aforementioned dismissed claims in Counts I and III, Count IV against Moving Defendants. Plaintiff may submit a second amended complaint within forty-five (45) days if she can cure the deficiencies identified in this Opinion. The Motion to Dismiss is denied in all other respects.

An appropriate Order follows.

DATED: October 30, 2026

Georgette Castner

**GEORGETTE CASTNER**
**United States District Judge**

---

[11] Moving Defendants additionally indicate that Count V of the FAC should be dismissed because Plaintiff failed to file the requisite Tort Claim Notice. (*See* ECF No. 51 at 4-5.) However, it is undisputed that "Count V alleges Tortious Conduct against Fictious Individuals and Entities," not Moving Defendants. (*Id.* at 4.) The Court therefore denies the Motion to Dismiss as to Count V.